UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

                                      Case No.: 10-72473-ast

MAREK ROGOWSKI,                       Chapter 13

                               Debtor.
-------------------------------------------------------X

## MEMORANDUM OPINION OVERRULING DEBTOR'S OBJECTION TO DEBTOR'S FORMER SPOUSE'S MATRIMONIAL ATTORNEY'S FEE CLAIM AS A DOMESTIC SUPPORT OBLIGATION

       The matter before the Court involves the priority status and nondischargeability in a chapter 13 case of a non-debtor former spouse's matrimonial attorney's fees incurred in a prepetition divorce action.  Pending before the Court is an objection ("Objection") filed by Debtor, Marek Rogowski ("Debtor"), to the proof of claim (the "Claim" [Claim # 5]) filed by his former spouse's matrimonial attorneys, Schonfeld & Goldring, LLP ("Schonfeld"). [dkt item 21] The Claim is for the amount of $32,950.00, representing matrimonial attorney's fees incurred by Debtor's former spouse, Christine Ella Rogowski ("CER"), which Debtor was ordered to pay in a pre-petition judgment of divorce (the "Divorce Judgment"). [dkt item 21, Exhibit B]  Schonfeld asserts priority status for the Claim as a domestic support obligation ("DSO") under Section 507(a)(1)(A) or (a)(1)(B) of the Bankruptcy Code[1].  Debtor does not object to the amount of the Claim, but objects to the asserted priority status.

       Debtor argues that the Claim is not entitled to priority status on the grounds that "the legal fees are not owed to or recoverable by the Debtor's former spouse or child; such fees were

---

[1] Throughout this Memorandum Opinion, all statutory references to the Bankruptcy Code are under Title 11 of the United States Code, §§ 101-1532, unless otherwise indicated.

directly awarded to counsel for his former spouse, and are thus owed to counsel," and that "the

legal fees awarded were not in the nature of alimony, maintenance or child support but were part

of the state court's equitable distribution of the marital assets." [dkt item 21, ¶¶ 6-7]  In response,

Schonfeld states CER's matrimonial attorney's fees constitutes a priority debt "because it

qualifies as a domestic support obligation under the circumstances pursuant to 11 U.S.C.

§§ 101(14[A]) and 507(a)(1)."  [dkt item 25] Schonfeld states the question presented by the

Claim and the Objection as follows:

> The issue before the court is whether a claim for the pre-petition attorney's fees of
> a non-filing former spouse that arose out of the Debtor's matrimonial action may
> qualify as a nondischargeable domestic support obligation entitled to priority
> treatment pursuant to 11 U.S.C. §§ 101(14[A]) and 507(a) in a Chapter 13
> Bankruptcy case.

[dkt item 25, ¶ 4]

For the reasons stated herein, this Court concludes that Schonfeld's Claim for

matrimonial attorney's fees constitutes a DSO under § 101(14A), and is therefore entitled to

administrative priority status under § 507(a)(1) in this chapter 13 case, and is a nondischargeable

debt under §§ 523(a)(5) and 1328(a)(2).

## <u>Jurisdiction</u>

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b)

and 157(b)(2)(A), (B), (I) and (O), and the Standing Order of Reference in effect in the Eastern

District of New York dated August 28, 1986.  This decision constitutes the Court's findings of

facts and conclusions of law to the extent Rule 7052 of the Federal Rules of Bankruptcy

Procedure so requires. FED. R. BANKR. P. 7052.

## **Background**

The facts of the marriage of Debtor and CER and the resulting dissolution action are established by the Decision After Trial [dkt item 25, Exhibit B] of Justice Arthur M. Daimond of the Supreme Court of Nassau County, New York, who presided over the divorce.  By way of summary, Debtor and CER were married on January 9, 1993.  CER filed for divorce in Nassau County Supreme Court in 2008.  Grounds for the divorce were resolved by agreement, leaving for trial the economic issues of child support, maintenance, equitable distribution, and allocation of various debts.

A trial was held in June 2009.  At the time of the trial, CER was forty-two years of age and Debtor was thirty-eight years old; they have three children, all boys, who in June 2009 ranged in age from five to twelve years old.  At the time of the marriage, CER worked in the field of fashion design, but, by agreement, left her career to become a homemaker and full-time parent; by June 2009, CER had been completely out of the workforce for over twelve years.  As of June 2009, Debtor was a certified public accountant, employed by Wachovia Securities with the title of Product Equities Manager.  Prior to the banking and financial crisis of the fall of 2008, Debtor was earning approximately $350,000 per year, at least half of which was typically paid via a year-end bonus.

Prior to their divorce, the Rogowski family lived a very comfortable, debt-free, suburban lifestyle.  Debtor earned a significant income; the family took vacations; the children participated in countless extracurricular activities; they remodeled their home several times; they purchased a vacation/retirement property in Florida.  However, this apparent tranquility was disrupted in the fall of 2007, when CER discovered an unauthorized charge to one of her credit cards; that

discovery ultimately lead to the admission by Debtor that he had incurred substantial debts and had essentially spent all of the couple's marital estate covering those debts. The family's ability to recover economically from these debts was severely impacted in the fall of 2008, as a result of the financial and banking crisis, when Debtor's annual income of $350,000 was reduced by approximately one-half.

Justice Diamond issued the Divorce Judgment dated February 23, 2010, which was entered on March 3, 2010. The Divorce Judgment, *inter alia*, directs Debtor to pay CER's credit card debt that Debtor incurred in her name, to make payments on the second mortgage on the family residence, to provide for their childrens' medical expenses, to pay child support and maintenance to CER, and to pay CER's matrimonial attorney's fees.

On April 8, 2010, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code ("Petition"). [dkt item 1] On his Schedule F, Debtor lists a liability to Schonfeld in the amount of $32,950 as a general unsecured claim, with the description: "Claim incurred: 2/23/10; Ex-spouse's attorneys fees as per judgment of divorce." Also on April 8, 2010, Debtor filed a Chapter 13 plan. [dkt item 5] The plan proposes a pro-rata distribution to unsecured creditors of not less than ten percent, based on a monthly plan payment of $1,247 to be paid to the Chapter 13 Trustee over a period of sixty months. On June 9, 2010, Schonfeld filed the Claim, asserting priority status. Due in part to the issues arising under the Claim, and due in part to a pending adversary proceeding[2] filed by CER against Debtor (the "Adversary") seeking a determination of

---

[2]  Christine Rogowski, vs. Marek Rogowski, Adv. Proc. No. 10-8305-ast. In the Adversary, CER alleges, *inter alia*, that Debtor was directed to pay the second mortgage on the former marital residence, as well as certain credit card debt owed by CER. After the mediation was unsuccessful, the Court scheduled a trial in the Adversary for January 18, 2012.

nondischargeability of certain other debts arising under the Judgment, this Court ordered CER

and Debtor to mediation of the issues in this main bankruptcy case as well as in the Adversary.

[dkt item 36]  These matters were not resolved through mediation.  The hearing to consider

confirmation of Debtor's plan is now set for March 8, 2012.

## Legal Analysis

*Administrative priority status and nondischargeable status of*
*domestic support obligations in chapter 7 and chapter 13 cases*

To determine whether the Claim is nondischargeable and entitled to priority status, the

Court must analyze §§ 101, 507(a), 523, 727, and 1328, and the changes to those sections made

or impacted by the substantial amendments to the Bankruptcy Code enacted by Congress under

the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

BAPCPA introduced significant statutory changes regarding the status of debts and obligations

arising from the marital relationship, and applied to cases commenced after October 17, 2005.

These amendments included adding a definition of a DSO in § 101(14A)[3], granting a first priority

---

[3]  Section 101(14A) provides:

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

(A) owed to or recoverable by--

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–

administrative status to DSOs under § 507(a)(1)[4], and modifying § 523(a) to "significantly limit"

a debtor's ability to discharge debts related to a matrimonial action. *In re Schenkein*, 2010 WL

3219464, at *4 (Bankr. S.D.N.Y. Aug. 9, 2010).[5]  Section 523(a)(5)[6] creates an exception from

---

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

[4]  Section 507(a)(1) provides:

The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

11 U.S.C. § 507(a)(1).  Section 507(a)(2) provides a second priority administrative claim for a DSO that has been assigned "by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit." 11 U.S.C. § 507(a)(2).

[5]  For example, "BAPCPA removed the balancing test from Section 523(a)(15) and made the distinction between domestic support obligations and other obligations arising from a divorce immaterial in a dischargeability analysis." *In re Ginzl*, 430 B.R. 702, 707 (Bankr. M.D. Fla. 2010).

[6]  Section 523(a) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 U.S.C. § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt-
. . .
(5) for a domestic support obligation.

11. U.S.C. § 523(a)(5).

discharge for any debt "for a domestic support obligation," and § 523(a)(15)[7] creates an

exception from discharge for any debt to a spouse, former spouse, or child of the debtor that is

"incurred in the course of a divorce or separation or in connection with a separation agreement,

divorce decree or other order of a court of record" and which is in the nature of a DSO but does

not fall within the definition of a DSO.[8]  Finally, § 1328(a)(2) provides that a chapter 13

discharge does not discharge (among other things) any debt under § 523(a)(5), which is a debt for

a "domestic support obligation" as defined under § 101(14A).  There is a tension between

§ 523(a) and § 1328(a) as to whether debts that fall under § 523(a)(15) can be discharged in a

chapter 13 case.  However, that determination is not impactive for this case.[9]

---

[7]  Section 523(a)(15) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 U.S.C. § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt—
. . .
(15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11. U.S.C. § 523(a)(15).

[8]  No adversary proceeding need be filed to obtain a determination of nondischargeability as to debts that fall within the definitions of §§ 523(a)(5) and 523(a)(15). *See* § 523(c).

[9]  In a chapter 13 case, a debtor who obtains a discharge under § 1328(a) may be able to discharge debts that fall outside the scope of § 523(a)(5) but fall within the scope of § 523(a)(15).  There is a facial conflict between § 523(a) and § 1328(a)(2). Section B § 523(a) states that "A discharge under § 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt" enumerated under subsections 523(a)(1) through (a)(19), which includes subsections 523(a)(5) and (a)(15); however, § 1328(a)(2) provides that DSO's that are not dischargeable under § 523(a)(5) are not dischargeable in a chapter 13 case; § 1328(a)(2) does not expressly provide that debts which fall within the scope of § 523(a)(15) are not discharged by a chapter 13 discharge.  Thus, by negative implication, claims that arise under § 523(a)(15) can be argued to be dischargeable in a chapter 13 case; however, this Court need not and does not reach this issue.  The same does not hold true in chapter 7 cases. Because § 523(a) impacts all chapter 7 discharges granted under § 727, "it is irrelevant whether those awards constitute true support obligations, because even if not encompassed within § 523(a)(5), they are nondischargeable pursuant to § 523(a) (15)." *In re Tarone*, 434 B.R. 41, 49 (Bankr. E.D.N.Y. 2010).

*Post-BAPCPA case law interpreting DSO status for matrimonial attorney's fees*

There is no post-BAPCPA Second Circuit case law applying § 101(14A) to determine the priority status of matrimonial attorney's fees incurred by the non-filing former spouse and/or determining the nondischargeability thereof in a chapter 13 case, but there are several decisions in chapter 7 cases.  In *In re Tarone*, 434 B.R. 41 (Bankr. E.D.N.Y. 2010), a post-BAPCPA case, Chief Judge Craig of this Court held that a chapter 7 debtor's obligations for maintenance and attorney's fees awarded in favor of his non-debtor ex-wife in a marital dissolution proceeding were nondischargeable under §§ 523(a)(5) and 523(a)(15).  Judge Craig noted in *Tarone* that prior to BAPCPA, the language of § 523(a)(15) permitted the discharge in a chapter 7 or chapter 13 case of obligations that were not characterized as support obligations owed to a former spouse under certain delineated circumstances; to discharge such debts, a court was required to determine that the debtor did not have the ability to repay the obligation, and that the discharge of the debt would yield a benefit to the debtor that outweighs the detriment of the discharge to the former spouse or child of the debtor.  434 B.R. at 48.  Under BAPCPA, Congress removed this type of balancing and analysis, and sought to establish clear guide posts for what debts are dischargeable and what debts are not dischargeable that arise in the domestic relations area. *Id.*

*Tarone* relied on *In re Golio*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008), a post-BAPCPA chapter 7 case, in which Judge Eisenberg of this Court rejected a debtor's argument that a prepetition divorce judgment that included an award of attorney's fees should not be excepted from discharge simply because the payments were made payable directly to the non-debtor spouse's matrimonial attorneys, rather than to the ex-spouse for later payment to the attorneys. Judge Eisenberg noted that N.Y. Domestic Relations Law § 237(c) requires that the attorney's

fees had to be payable directly to the attorney and could not be ordered paid to the non-attorney client, and stated that using this New York statutory requirement as a basis to avoid nondischargeability "elevates form over substance . . . .  Indeed, if only a former spouse's counsel is entitled to attorney's fees under N.Y. Domestic Relations Law § 237(c), then arguably attorney's fees awarded in New York divorce cases may be rendered dischargeable under a narrow interpretation of 11 U.S.C. § 523(a)(5) and (15) as those provisions do not list obligations owing to a spouse's counsel as being excepted from discharge." *Id.* at 63.  The *Golio* decision concluded that an award of attorney's fees to the divorcing party is in the nature of a support obligation, and, as such, should be excepted from discharge to be "consistent with the legislative purpose of 11 U.S.C. §§ 523(a)(5) and (a)(15)." *Id.*

The Southern District of New York bankruptcy court reached a similar conclusion in *Schenkein*, also a post-BAPCPA chapter 7 case, in which the court noted that "Under the former version of § 523(a)(15), the Court would be required to assess whether the award constitutes maintenance, alimony, or support, which are automatically nondischargeable, as opposed to some other form of debt for which the merits of a discharge would have to be weighed through a multi-factor balancing test."  2010 WL 3219464, at *4.[10]

While it does not appear that a court in the Second Circuit has addressed the priority status and nondischargeability of matrimonial attorney's fees incurred by the non-filing former

---

[10]   In so holding, the court relied on the uniform application of § 523(a) to chapter 7 cases, stating "BAPCPA makes this evaluation process largely irrelevant since currently any debt arising from a divorce proceeding which would not fall under § 523(a)(5) is nevertheless excepted from discharge under § 523(a)(15)." *Schenkein*, 2010 WL 3219464, *at *4*; *see also In re Chase*, 392 B.R. 72 (Bankr. S.D.N.Y. 2008) (finding that § 523(a)(15) did not apply to debts that were already determined to be nondischargeable under § 523(a)(5)).  Thus, *Golio, Schenkein,* and *Tarone* made no distinction between dischargeability under § 523(a)(5) or under § 523(a)(15) for the matrimonial attorney's fees because any such distinction is irrelevant in a chapter 7 case.

spouse post-BAPCPA in a chapter 13 case, that issue was addressed by the bankruptcy court for

the Western District of Arkansas in *In re Andrews,* 434 B.R. 541 (Bankr. W.D. Ark. 2010).  In

*Andrews,* the attorney who represented the debtor's former wife in a pre-petition divorce objected

to confirmation of the debtor's chapter 13 plan under §§ 1322(a)(2) and 1325(a)(1), because the

proposed plan failed to pay the attorney's claim for fees in full, and because the plan failed to

schedule the attorney's claim as an administrative priority claim under § 507(a)(1)(A)-(B).  The

*Andrews* court first rejected debtor's argument that the claim was dischargeable because the

payee was his ex-wife's attorney and not his "spouse [or] former spouse," finding that under pre-

BAPCPA Eighth Circuit law, the name of the payee was not determinative of nondischargeable

status.  *Id.* at 547.  Next, the *Andrews* court undertook a two-part test to determine DSO status:

(1) where the obligation is payable directly to a third party, typically a professional who provided

services to benefit the wife or child, whether the former spouse is also obligated for payment of

the obligation; and (2) whether the obligation is in the nature of alimony, maintenance, or

support.  Applying factors from pre-BAPCPA case law,[11] the *Andrews* court concluded that the

attorney's claim for pre-petition divorce-related attorney's fees for representing the non-debtor

spouse satisfied the statutory definition in § 101(14A) and, therefore, was entitled to priority

---

[11]  The *Andrews* court stated:

> Factors considered by the bankruptcy courts in determining whether particular debts are intended to
> serve as support include the parties' relative financial conditions at the time of divorce, the parties'
> respective employment histories and prospects for financial support, the fact that one party or another
> receives the marital property, the periodic nature of the payments, and whether it would be difficult
> for the former spouse and children to subsist without the payments.

434 B.R. at 549.  It appears that these factors were set forth in a pre-BAPCPA decision by the Eighth Circuit
Bankruptcy Appellate Panel. *Id.* (citing *In re Tatge*, 212 B.R. 604, 608 (B.A.P. 8th Cir.1997)).  However, as Chief
Judge Craig noted in *Tarone*, BAPCPA specifically removed factors such as the debtor's ability to pay from the
DSO analysis. 434 B.R. at 48.

treatment in the debtor's chapter 13 plan. *Id.* at 550.[12]  In reaching this conclusion, the *Andrews* court noted that "Whether the debt is a nondischargeable support obligation is a question of federal bankruptcy law, not state law."  434 B.R. at 547-48.[13]

Under federal bankruptcy law, as embodied in § 101(14A), a nondischargeable DSO claim must be:

1.      "owed to or recoverable by (i) a spouse, former spouse, or child of the debtor . . .";

2.      "in the nature of alimony, maintenance, or support";

3.      "established . . . by reason of applicable provisions of (i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law"; and

4.      "not assigned to a nongovernmental entity, unless that obligation is assigned

---

[12]  As further evidence of the state court's intent in awarding the attorney's fees, the *Andrews* court noted that a post-petition order of the state court that had issued the divorce decree "specifically characterized the attorney fee award as a support obligation." *Id.* at 544.  That state court order provided:

> the Decree of January 24, 2008, is clarified to provide that the attorney's fees awarded in this Court's Decree were awarded to be paid on behalf of the Wife as a consequence of the attorney's efforts in establishing an award to the Wife for her support and maintenance as well as the support and maintenance of the minor children. That due to the parties' disparate income status as found and indicated by this Court's findings, it would not be possible for the Wife to satisfy the reasonable attorney's fees incurred during the litigation of this matter and that it would be necessary for the Husband to pay the same on the Wife's behalf. That the Court intended for said award to be in the nature of support for the Wife due to her inability to pay the same.

*Andrews*, 434 B.R. at 544.

[13]  Many federal courts have held that the labels attached by state courts to the awards in a divorce case, such as alimony, maintenance, support or equitable distribution, while instructive, are not determinative as to priority or nondischargeable status. *In re Brody*, 3 F.3d 35, 39 (2d Cir. 1993); *Forsdick v. Turgeon*, 812 F.2d 801, 802-03 (2d Cir. 1987); *see also In re Evert*, 342 F.3d 358, 368 (5th Cir. 2003); *In re Werthen*, 329 F.3d 269, 273 (1st Cir. 2003); *In re Reines*, 142 F.3d 970, 972 (7th Cir. 1998); *Sylvester v. Sylvester*, 865 F.2d 1164, 1165-1166 (10th Cir. 1989); *Tilley v. Jessee*, 789 F.2d 1074, 1077-1078 (4th Cir. 1986); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984); *In re Williams*, 703 F.2d 1055, 1057-58 (8th Cir. 1983).

voluntarily . . . ."

11 U.S.C. § 101(14A). In the present case, the Debtor has not challenged the third and fourth

elements; therefore, the critical questions for this Court are: (1) whether Schonfeld's Claim

constitutes a DSO when the payee is not the Debtor's " spouse, former spouse, or child of the

debtor"; and (2) whether the legal fees are "in the nature of alimony, maintenance or support."

*Pre-BAPCPA law determined that the nature of the payee*
*did not impact nondischargeable status*

Prior to BAPCPA, the Second, Eight and Ninth Circuits had addressed the narrow

question of how the nondischargeable status of a debt arising from a domestic relations case is

impacted by the identity of the payee. The Second Circuit declared itself "the first to consider

this issue" under the 1978 Bankruptcy Code, and "looked to the legislative history of § 523(a)(5)

to determine that the nature of the debt was more important than the identity of the payee." *In re*

*Spong*, 661 F.2d 6, 9-10 (2d Cir. 1981). Under § 523(a)(5), as in effect in 1978,[14] a discharge in

bankruptcy did not discharge an individual debtor from debts "for alimony to, maintenance for,

or support of" a former spouse in connection with a divorce decree. *Id.* at 7. The *Spong* debtor

had agreed in the divorce proceeding to pay $4,000 of his former spouse's $10,000 matrimonial

---

[14]  Section 523(a)(5) at that time read:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor
from any debt . . . (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance
for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or
property settlement agreement, but not to the extent that

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability
is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5) (amended 2005).

attorney's fees, which the debtor was to pay directly to his former spouse's matrimonial attorney. *Id.* at 7-8. However, the debtor sought to discharge the debt in his subsequent bankruptcy case.[15] *Id.* at 7-8. The bankruptcy court held the debt to be dischargeable. *Id.* at 8. The district court affirmed. *Id.* at 8. The Second Circuit reversed. *Id.* at 11.

Pre-BAPCPA § 523(a)(5) provided that a discharge in bankruptcy did not discharge a debtor from debts "for alimony to, maintenance for, or support of" a former spouse in connection with a divorce decree. The issue in *Spong* was "whether a debt for legal services rendered to a debtor's former spouse in connection with a divorce proceeding falls within the above exception." *Spong*, 661 F.2d at 7. After reviewing case law decided under the Bankruptcy Act of 1898 and legislative history to the 1978 Bankruptcy Code, the Second Circuit concluded that to the extent the bankruptcy court "was participating in the formulation of a bankruptcy definition of alimony and support, it correctly concluded that defendant's undertaking to pay his wife's legal bill fell within that definition." *Id.* at 9. The Second Circuit noted that "An award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law." *Id.* at 9. Therefore, the court held that "it would be exalting form over substance to fail to treat appellee's agreement to pay his wife's counsel fee" as nondischargeable. *Id.* at 11; *see also In re Klein*, 197 B.R. 760 (Bankr. E.D.N.Y. 1996) ("It is well settled in this Circuit that obligations in the nature of alimony, maintenance and support may include attorney's fees incurred by a former spouse in connection with a divorce proceeding, custody dispute, or obtaining and enforcement of alimony and support awards."). Thus, the Second Circuit rejected the name of the payee as determinative, focusing instead on the

---

[15] Neither the bankruptcy nor appellate court opinions specify which chapter the case was filed under.

substance of the award.

The Ninth Circuit followed *Spong* in *In re Chang*, 163 F.3d 1138 (9th Cir. 1998), as did the Eighth Circuit in *Holliday v. Kline (In re Kline)*, 65 F.3d 749 (8th Cir. 1995).

*Current statutory formulation of the named payee*

As noted above, the current definition of a DSO under § 101(14A) includes a debt "in the nature of alimony, maintenance, or support," which is "owed to or recoverable by" a "spouse, former spouse, or child of the debtor." The same language regarding the payee – "spouse, former spouse, or child of the debtor" – appeared in the pre-BAPCPA version of § 523(a)(5). It is a fundamental principal of statutory construction that the same words used in different sections of the same statute are to be given the same meaning and effect. *United Sav. Assoc v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988); *Sorenson v. Sec. of Treasury*, 475 U.S. 851, 860 (1986); *but see Dewsnup v. Timm*, 502 U.S. 410, 415-17 (1992). While Congress did substantially restructure portions of the Bankruptcy Code in the 2005 BAPCPA amendments related to domestic relations debts, it did not narrow the wording from prior § 523(a)(5) "for alimony to, maintenance for, or support" in establishing a definition of "domestic support obligation" in § 101(14A); in fact, Congress expanded the concept from "for alimony, maintenance, or support" to "in the nature of alimony, maintenance, or support." Further, Congress did not express an intention to overrule the construction given to the pre-BAPCPA version of § 523(a)(5) by three circuit courts of appeals that minimized the importance of the named payee.[16]

_____

[16]  To the contrary, the BAPCPA amendments "accord[] domestic and child support claimants a broad spectrum of special protections. The legislation creates a uniform and expanded definition of domestic support obligations" and provides DSOs with "the highest payment priority. . . . It also broadens the categories of

This Court concludes that the Second Circuit would apply the current § 523(a)(5) in the same manner as it did in *Spong*, would attach no preclusiveness to the named payee in the divorce decree, and would require that the substance of the award should prevail, not its form. Thus, in following pre-BAPCPA *Spong* and post-BAPCPA *Tarone, Golio, and Schenkein*, this Court concludes that it should overrule Debtor's objection to the Schonfeld Claim based upon the claim being payable to Schonfeld rather than directly to the Debtor's former spouse.

This leaves for determination, then, whether the award of fees to Schonfeld is "in the nature of alimony, maintenance or support" and, therefore, a DSO as defined under § 101(14A) which is entitled to administrative priority status under § 507(a)(1)(A) and nondischargeable under §§ 523(a)(5) and § 1328(a)(2).

*A claim for matrimonial attorney's fees properly awarded under*
*New York state law is a domestic support obligation*

What constitutes alimony, maintenance or support is determined under federal bankruptcy law, not state law, although bankruptcy courts may refer to well-established state laws in making that determination. *Forsdick v. Turgeon*, 812 F.2d 801, 802-03 (2nd Cir. 1987); *Spong* 661 F.2d at 9 (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 364 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6320 (1977 WL 9628)); *see also Grogan v. Garner*, 498 U.S. 279, 284 (1991). New York state law has long recognized that, in a divorce proceeding, "legal services rendered to a wife may, under various circumstances, be classified as necessaries for which a husband is liable." *Dravecka v.* Richard, 267 N.Y. 180, 182, 196 N.E. 17, 18 (1935); *see O'Shea*

---

nondischargeable family support obligations with the result that these debts will not be extinguished at the end of the bankruptcy process." H.R. Rep. No 109-31(I), 109th Cong., 1st Sess. (2005), reprinted in 2005 U.S.C.C.A.N. 88, 102 (2005 WL 832198).

Memorandum Opinion- p. 15

*v. O'Shea*, 93 N.Y.2d 187, 191, 711 N.E.2d 193, 195, 689 N.Y.S.2d 8, 10 (1999) (citing cases

dating back to 1872). New York State Domestic Relations Law § 237 authorizes a court in a

divorce proceeding to order one spouse to pay the other spouse's attorney's fees "as, in the

court's discretion, justice requires, having regard to the circumstances of the case and of the

respective parties. There shall be [a] rebuttable presumption that counsel fees shall be awarded

to the less monied spouse." N.Y. DOM. REL. LAW § 237(a) (McKinney 2011).[17]

     In determining whether to award matrimonial attorney's fees under Domestic Relations

Law § 237, New York courts are instructed to "review the financial circumstances of both parties

together with all the other circumstances of the case, which may include the relative merit of the

parties' positions. The court may also consider whether either party has engaged in conduct or

---

[17] Domestic Relations Law § 237(a) provides in full:

In any action or proceeding brought (1) to annul a marriage or to declare the nullity of a void marriage, or (2) for a separation, or (3) for a divorce, or (4) to declare the validity or nullity of a judgment of divorce rendered against a spouse who was the defendant in any action outside the State of New York and did not appear therein where such spouse asserts the nullity of such foreign judgment, (5) to obtain maintenance or distribution of property following a foreign judgment of divorce, or (6) to enjoin the prosecution in any other jurisdiction of an action for a divorce, the court may direct either spouse or, where an action for annulment is maintained after the death of a spouse, may direct the person or persons maintaining the action, to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. There shall be rebuttable presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court's discretion, the court shall seek to assure that each party shall be adequately represented and that where fees and expenses are to be awarded, they shall be awarded on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding. Applications for the award of fees and expenses may be made at any time or times prior to final judgment. Both parties to the action or proceeding and their respective attorneys, shall file an affidavit with the court detailing the financial agreement between the party and the attorney. Such affidavit shall include the amount of any retainer, the amounts paid and still owing thereunder, the hourly amount charged by the attorney, the amounts paid, or to be paid, any experts, and any additional costs, disbursements or expenses. Any applications for fees and expenses may be maintained by the attorney for either spouse in his own name in the same proceeding. Payment of any retainer fees to the attorney for the petitioning party shall not preclude any awards of fees and expenses to an applicant which would otherwise be allowed under this section.

N.Y. DOM. REL. LAW § 237(a) (McKinney 2011).

taken positions resulting in a delay of the proceedings or unnecessary litigation." *Prichep v. Prichep*, 52 A.D.3d 61, 64, 858 N.Y.S.2d 667, 669-70 (N.Y. App. Div. 2d Dep't 2008) (internal citations and quotation marks omitted).  While the recipient spouse's financial need is not the sole criteria, it appears that matrimonial attorney's fees cannot be awarded to a former spouse absent a showing of financial need on the part of the recipient spouse.  As the Appellate Division, Second Department stated, "In a matrimonial action, an award of an attorney's fee should be based, *inter alia*, on the relative financial circumstances of the parties . . . ." *Ciociano v. Ciociano*, 54 A.D.3d 797, 797, 863 N.Y.S.2d 766 (N.Y. App. Div. 2d Dep't 2008); *see Johnson v. Chapin*, 12 N.Y.3d 461, 467, 909 N.E.2d 66, 70, 881 N.Y.S.2d 373 (2009). Correspondingly, "[w]here both parties are similarly situated financially and the plaintiff has failed to establish any financial inability to pay her own counsel fees, an award of counsel fees from one spouse to another is both erroneous and inappropriate." *Rough v. Kandell*, 135 A.D.2d 700, 701-02; 522 N.Y.S.2d 599, 601 (N.Y. App. Div. 2d Dep't 1987).

Applying this rule, New York appellate courts have overturned awards of matrimonial attorney's fee where there was no finding of financial need on the part of the recipient spouse. *Chapin,* 12 N.Y.3d 461, 467, 909 N.E.2d 66, 70, 881 N.Y.S.2d 373 (2009); *DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881, 518 NE2d 1168, 524 NYS2d 176 (1987); *Lang v. Lang*, 72 A.D.3d 1255, 1257, 897 N.Y.S.2d 778, 780-81 (N.Y. App. Div. 3d Dep't 2010); *Prichep v. Prichep*, 52 A.D.3d 61, 64, 858 N.Y.S.2d 667, 669-70 (N.Y. App. Div. 2d Dep't 2008); *Sharwell v. Sharwell*, 155 A.D.2d 434 (N.Y. App. Div. 2d Dep't 1989); *Ackerman v. Ackerman*, 96 A.D.2d 543; 465 N.Y.S.2d 49, 50 (App. Div. 2d Dep't 1983).  Similarly, New York state courts have reversed the denial of attorney's fees where the spouse seeking matrimonial attorney's fees

had demonstrated financial need. *O'Shea v. O'Shea*, 93 N.Y.2d 187, 193, 711 N.E.2d 193, 197, 689 N.Y.S.2d 8, 12 (1999); *Matter of Silverstein v. Silverstein*, 60 A.D.3d 1073, 1074, 878 N.Y.S.2d 69, 70 (N.Y. App. Div. 2d Dep't 2009) (involving child support).

Therefore, it appears that a New York court must, at a minimum, find that the former spouse requires financial support before the court can properly award that spouse matrimonial attorney's fees. Because a finding of financial need is required, this Court concludes that a proper award of matrimonial attorney's fees under New York state law is "in the nature of alimony, maintenance, or support," thus satisfying the second element of a DSO claim under § 101(14A).

Here, it appears that the Nassau County Supreme Court held a hearing on matrimonial attorney's fees in October 2009. [dkt item 21, Exhibit B, at 2]  While the record of that hearing is not in evidence before this Court, there is clear evidence in this Court's record of CER's financial need that supports the state court's award of matrimonial attorney's fees to CER, including the following facts:

- CER "ha[d] no prospects for anything but part time unskilled jobs";

- CER had not worked in her chosen field for over 13 years at the time of divorce;

- Debtor "was the sole wage earner for the [last] 12 years of the marriage"; and

- There was "no equitable distribution for either party to leave the marriage with."

[dkt item 25, at 5].  This Court cites these facts not as dispositive in and of themselves to establish a support finding, but as a basis upon which this Court draws an inference that a proper basis existed under New York law upon which the Nassau County Supreme Court awarded CER matrimonial attorney's fees based upon her demonstrated financial need.  Additionally, the Court

notes that, because there was no martial estate to equitably distribute, the award of matrimonial attorney's fees could not have been a property settlement as asserted by the Debtor.

Thus, this Court concludes that the Debtor's obligation to pay Schonfeld's Claim for CER's matrimonial attorney's fees pursuant to the Judgment of Divorce satisfies the definition of a DSO in § 101(14A). As such, Schonfeld's Claim is entitled to administrative priority status under § 507(a)(1), and is a nondischargeable debt under §§ 523(a)(5) and 1328(a)(2).

### <u>Conclusion</u>

Based upon the foregoing, the Debtor's Objection to Schonfeld's Claim is hereby overruled.

An Order consistent herewith shall issue.

**Dated: December 21, 2011**
**Central Islip, New York**
Memorandum Opinion- p. 19

_____
**Alan S. Trust**
**United States Bankruptcy Judge**